IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. WELLS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

COREY WELLS, APPELLANT.

Filed December 29, 2015.    No. A-15-108.

Appeal from the District Court for Douglas County: DUANE C. DOUGHERTY, Judge. Affirmed.

Corey Wells, pro se.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein, for appellee.

MOORE, Chief Judge, and INBODY and BISHOP, Judges.

BISHOP, Judge.

Corey Wells appeals the order of the district court for Douglas County, Nebraska, denying his "Motion for Order of Nunc Pro Tunc." In his pro se motion, Wells argued that when the district court sentenced him in March 2005 for possession with intent to deliver cocaine, with a habitual criminal enhancement, the court relied on misinformation from the Department of Correctional Services (Department) regarding how good time credit would be applied to his sentence. According to Wells, the court's reliance on the misinformation caused it to impose a sentence of 20 to 30 years' imprisonment, when it intended a lesser sentence. The district court denied the motion, and we affirm.

### BACKGROUND

Following his arrest on January 10, 2004, Wells was charged with possession with intent to manufacture, distribute, deliver, or dispense cocaine or any mixture or substance containing a

detectable amount of cocaine in a quantity of at least 10 grams but less than 28 grams, a Class ID felony. Neb. Rev. Stat. § 28-416(7)(c) (Supp. 2003). An amended information also included an allegation that Wells was a habitual criminal, which carried a 10-year mandatory minimum sentence if proven. See Neb. Rev. Stat. § 29-2221 (Reissue 1995). At trial, Wells admitted to possessing 27.6 grams of crack cocaine and planning to share the crack cocaine with others, and a jury found Wells guilty as charged. At the sentencing hearing on March 2, 2005, the court discussed Wells' criminal history, which included six prior felony convictions. The court sentenced Wells as a habitual criminal to between 20 and 30 years' imprisonment. The court said:

> I'm going to sentence you to a term of 20 to 30 years in the State Department of Corrections. What that means -- and I have to tell you that there is [sic] various opinions about what that means, but one thing for sure is it means ten years mandatory. And it's this Court's interpretation, based upon my conversation with Mr. Russ Miller down at the Lincoln penitentiary, who is the one that [sic] actually calculates this, that he gives credit for good time on the ten mandatory years. So with a bottom number of 20 years, my understanding is you would have to serve, if you get credit for all good time, mandatory 10. And with the top number of 30 years, my understanding is you'd have to serve a mandatory 15 if you get credit for all good time. That's my understanding based on my conversation with him.

The court also granted Wells credit for time served. Wells unsuccessfully appealed his conviction to this court. See *State v. Wells*, 13 Neb. App. lxv (case No. A-05-432).

Following the filing of at least two unsuccessful motions for postconviction relief and three additional appeals to this court, on August 29, 2014, Wells filed the "Motion for Order of Nunc Pro Tunc" that is at issue in the current appeal. As stated above, he argued the court relied on misinformation from the Department regarding how good time credit would be applied to his sentence. According to Wells, the court advised him that he would serve between 10 and 15 years of his sentence, "when infact [sic] the sentence Defendant is doing is 15 years - 20 years max." Wells asked the district court to correct the "discrepancy in his sentence."

The court denied Wells' motion for an order nunc pro tunc, and Wells timely appeals to this court.

## ASSIGNMENT OF ERROR

Wells assigns, restated, that the district court erred in denying his motion for an order nunc pro tunc.

## STANDARD OF REVIEW

When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *State v. Sims*, 277 Neb. 192, 761 N.W.2d 527 (2009).

## ANALYSIS

The Nebraska Supreme Court has recognized that a clerical or formal error in a sentencing order may be corrected at any time by an order nunc pro tunc. *Id*. In *Sims, supra*, nearly 9 years

after he was sentenced for attempted murder, the defendant filed in his original criminal case a motion for an order nunc pro tunc asking the district court to correct a discrepancy between the sentence the court orally pronounced (10 to 25 years) and the one reflected in a written sentencing order (20 to 25 years). After the district court denied the motion, the Nebraska Supreme Court reversed, concluding that the written sentence was the result of a clerical error. *Id*. The court explained the purpose of an order nunc pro tunc:

> "The purpose of an order nunc pro tunc is to correct a record which has been made so that it will truly record the action had, which through inadvertence or mistake was not truly recorded. It is not the function of an order nunc pro tunc to change or revise a judgment or order, or to set aside a judgment actually rendered, or to render an order different from the one actually rendered, even though such order was not the order intended."

*Id.* at 201-02, 761 N.W.2d at 534, quoting *Continental Oil Co. v. Harris*, 214 Neb. 422, 333 N.W.2d 921 (1983). See, also, *State v. Bol*, 288 Neb. 144, 159, 846 N.W.2d 241, 254-55 (2014) ("[c]lerical errors may be corrected by an order nunc pro tunc, but judicial errors may not"). The court further reasoned that because an orally pronounced sentence prevails over a later written sentence, correcting the sentencing order nunc pro tunc did not revise or alter the judgment entered; rather, it corrected the record to accurately state the judgment entered. *Sims, supra*.

The present case is distinguishable from *Sims, supra*. The district court stated on the record it was sentencing Wells to 20 to 30 years' imprisonment, and the sentencing order accurately reflected the sentence imposed. There was no clerical error in the order, so there was nothing to correct nunc pro tunc.

However, our analysis does not end there. Wells' argument essentially is that there was a "discrepancy" between the court's oral pronouncement of sentence and the written sentencing order, insofar as the court's truth in sentencing advisement was inconsistent with the sentence actually imposed. Wells' argument is unavailing, as we explain below.

In 1993, Nebraska passed "truth in sentencing" legislation, effective September 9, 1993, which was codified at Neb. Rev. Stat. § 29-2204 (Supp. 1993). The version of § 29-2204 in effect at the time Wells was sentenced required a court imposing an indeterminate sentence to fix the minimum and maximum limits of the sentence to be served within the limits provided by law. Neb. Rev. Stat. § 29-2204(1)(a)(ii)(A) (Supp. 2003). It also required the court to advise the offender on the record of the following: (1) "the time the offender will serve on his or her minimum term before attaining parole eligibility assuming that no good time for which the offender will be eligible is lost," § 29-2204(1)(b), and (2) "the time the offender will serve on his or her maximum term before attaining mandatory release assuming that no good time for which the offender will be eligible is lost," § 29-2204(1)(c).

As the Nebraska Supreme Court explained in *State v. Castillas*, 285 Neb. 174, 826 N.W.2d 255 (2013), when a defendant is subject to a mandatory minimum sentence, a court is to determine the defendant's parole eligibility date by subtracting the mandatory minimum sentence from the court's minimum sentence, halving the difference, and adding that difference to the mandatory minimum. Similarly, the mandatory discharge date is computed by subtracting the mandatory minimum sentence from the maximum sentence, halving the difference, and adding that difference

to the mandatory minimum. *Id.* The reason for these calculations is that Neb. Rev. Stat. § 83-1,110(1) (Reissue 2008) prohibits the application of good time to mandatory minimum sentences. *Castillas, supra.*

As applied to our case, these principles mean that, under Wells' sentence of 20 to 30 years' imprisonment, given his 10-year mandatory minimum sentence as a habitual criminal, see § 29-2221, Wells will be eligible for parole after 15 years and subject to mandatory release after 20 years, assuming that no good time for which he is eligible is lost. This differs from the court's statement at the sentencing hearing that Wells will be eligible for parole after 10 years and subject to mandatory release after 15 years. Thus, as Wells contends, there is a discrepancy between the court's truth in sentencing advisement and the actual sentence imposed.

However, as the Nebraska Supreme Court in *Castillas, supra*, also explained, a conflict between the court's sentence and its truth in sentencing advisement is of no consequence for an offender's term of imprisonment. This is because § 29-2204(1) provides:

> If any discrepancy exists between the statement of the minimum limit of the sentence and the statement of parole eligibility or between the statement of the maximum limit of the sentence and the statement of mandatory release, the statements of the minimum limit and the maximum limit shall control the calculation of the offender's term.

Thus, even where, as here, a trial court advises an offender on the record of the incorrect parole eligibility and mandatory release dates, the minimum and maximum limits of the sentence imposed by the court control the offender's term. See *State v. Kinser*, 283 Neb. 560, 811 N.W.2d 227 (2012) (determining that the defendant would be eligible for parole after 14 years even though the trial court advised him on the record he would be eligible after 10 years). Therefore, even acknowledging the discrepancy between the district court's truth in sentencing advisement and the sentence imposed, there was no error to be corrected nunc pro tunc. The 20-year minimum limit and 30-year maximum limit of the sentence imposed by the court controls the calculation of Wells' term of imprisonment. Therefore, the district court properly denied Wells' motion for an order nunc pro tunc.

As a final matter, Wells argues in his reply brief that his conviction and sentence are void because, according to Wells, he was charged with intent to deliver cocaine in violation of § 28-416(7)(c) but convicted of intent to deliver crack cocaine in violation of § 28-416(8)(c). Errors not assigned in an appellant's initial brief are waived and may not be asserted for the first time in a reply brief. *Linscott v. Shasteen*, 288 Neb. 276, 847 N.W.2d 283 (2014). More importantly, the record before us reveals that Wells filed another "Motion for Order of Nunc Pro Tunc" challenging his conviction and sentence as void on the grounds raised in his reply brief; however, he has not appealed from any order ruling on that motion. Therefore, we decline to address Wells' claim that his conviction and sentence are void in this appeal.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court for Douglas County.

AFFIRMED.